OPINION OF THE COURT
Memorandum.
Ordered that the judgment is reversed, without costs, and judgment is directed to be entered in favor of plaintiff in the principal sum of $10,000.
Plaintiff brought this action to recover a $10,000 down payment he had paid defendant toward the purchase of a house. On April 4, 2004, plaintiff had obtained a loan approval letter from IndyMac Bank, which was valid until May 20, 2004. On April 19, 2004, plaintiff contracted to purchase a house from defendant and, it is undisputed, made a $10,000 down payment toward the purchase. At that time, the house had not yet been built. The contract of sale included a clause which made the sale contingent upon plaintiff obtaining a mortgage commitment, but provided that, subsequent to the issuance of a commitment, *63 plaintiff would have no right to terminate the agreement, “irrespective of whether purchaser fails to satisfy any conditions which may be contained in said commitment.” Although the contract of sale set an “on or about” closing date of September 15, 2004, it anticipated that the sale would not close until a certificate of occupancy was issued for the house, stating: “Once the c.o. is faxed to buyer’s atty, buyer agrees to close within ten days thereafter. From the eleventh day onward, if buyer has not closed, buyer will pay seller a $50 per day penalty for delay in closing.”
At a nonjury trial, plaintiff introduced evidence showing that, after he had entered into the contract of sale, he had been injured and unable to work, and that thereafter his loan commitment had been terminated based on the lender’s inability to verify his income. Plaintiffs son, who had represented plaintiff in all the negotiations concerning the house, testified that he had asked defendant if he “could get out of the contract.” Plaintiffs son further testified that, after his request had been denied, “he” had planned to proceed with the purchase.
Defendant testified that construction of the house had been completed on September 24, 2004, the house had been inspected on October 24, 2004, and a certificate of occupancy had issued on November 24, 2004. He said that he had told his attorney, but not plaintiff, about the completion of the house, and stated that, in January or February 2005, he had sold the house to a third party.
In its decision following trial, the District Court concluded that, under the terms of the contract of sale, plaintiff did not have a right to terminate the contract based on a withdrawal of the mortgage commitment. After noting that plaintiffs letter to his attorney, instructing his attorney to seek the return of his down payment, was dated four days after the issuance of a certificate of occupancy for the house, the court expressed doubt as to plaintiffs claims concerning the reasons for the termination of his mortgage commitment. It concluded that plaintiff had failed to make out a prima facie case for the return of his down payment, and awarded defendant judgment dismissing the complaint. We reverse.
The contract of sale between the parties placed the risk of loss of financing, following the issuance of a mortgage commitment, on plaintiff as purchaser. Since plaintiff had a mortgage commitment when he entered into the contract of sale, and the contract did not provide any other basis for plaintiff to cancel *64 the contract, the District Court correctly concluded that, under the terms of the parties’ agreement, even if the mortgage commitment had been revoked, plaintiff could not cancel the contract of sale based on that revocation (see Roga v Westin, 212 AD2d 685 [1995]; Arnold v Birnbaum, 193 AD2d 710 [1993]). The contract of sale thus remained in force.
Since a certificate of occupancy had not yet issued as of September 15, 2004, the initial date set for closing in the contract of sale, the contract could not have closed at that time. Under the contract, the time for plaintiff to close on the purchase or to be charged daily penalties for a delay in closing began to run only following the faxing of a certificate of occupancy to plaintiff’s attorney. Plaintiff’s son testified that plaintiffs attorney had never told him that he had received the certificate of occupancy, implying that defendant had failed to trigger the contractual requirement for plaintiff to close on the purchase. Defendant neither controverted plaintiffs testimony, nor offered any evidence either that the certificate of occupancy had ever been faxed to plaintiffs attorney or that a date had otherwise been set for plaintiff to appear at a closing. In the absence of evidence that defendant had fixed a date by which plaintiff was obligated to participate in a closing, and that defendant had informed plaintiff that if he did not perform by that date he would be considered in default, we find that plaintiff was not in default under the contract (see e.g. Pekich v James E. Lawrence, Inc., 38 AD3d 632, 633 [2007]; D’Abreau v Smith, 240 AD2d 616, 617 [1997]) as of the date that defendant sold the house to a third party.
We note that an “unequivocal, definite and final repudiation” (Coney Is. Exhaust v Mobil Oil Corp., 304 AD2d 706, 707 [2003]) by plaintiff would have entitled defendant to sell the house to a third party and would have provided defendant with a valid defense against plaintiff’s claim for the return of his down payment (see Peng v Willets Point Asphalt Corp., 81 AD3d 618 [2011]; Coney Is. Exhaust v Mobil Oil Corp., 304 AD2d at 707; see also Long Is. R.R. Co. v Northville Indus. Corp., 41 NY2d 455, 463 [1977]). However, here the only evidence offered concerning a possible repudiation was the testimony of plaintiff s son that he had inquired, in effect, as to whether defendant would agree to a mutual rescission of the contract of sale by asking to be relieved of his contractual obligations, and a copy of a letter dated November 28, 2004, signed by plaintiff and directed to plaintiff’s attorney, instructing his attorney to *65 demand a refund of his down payment. There was no evidence that this letter was ever transmitted to defendant’s attorney. Moreover, defendant never argued in the District Court that plaintiff had anticipatorily repudiated the contract of sale, and even failed so to argue in this court, in response to plaintiff’s assertion, in his appellate brief, that plaintiff had not anticipatorily repudiated the contract. Because the evidence was insufficient to manifest “an unequivocal, definite and final repudiation” of the contract by plaintiff, the contract remained in effect following the issuance of a certificate of occupancy.
In view of the foregoing, we find that defendant’s sale of the house in January or February 2005 to a third party constituted “an unequivocal, definite and final repudiation” of the parties’ agreement (Coney Is. Exhaust v Mobil Oil Corp., 304 AD2d at 707; see Fridman v Kucher, 34 AD3d 726 [2006]), which excused plaintiff from tendering performance (see Dixon v Malouf, 70 AD3d 763 [2010]). Since defendant breached the contract of sale, plaintiff was entitled to recover his down payment, even without establishing that he had been “ready, willing, and able to perform on the closing date” (Zeitoune v Cohen, 66 AD3d 889, 892 [2009]; see Scull v Sicoli, 247 AD2d 852, 853 [1998], cited with approval in Pesa v Yoma Dev. Group, Inc., 18 NY3d 527, 532 [2012]).
Accordingly, the judgment is reversed and judgment is directed to be entered in favor of plaintiff in the principal sum of $10,000.
Molía, J.E, Nicolai and LaCava, JJ., concur.